Good morning. My name is John Rhodes from the Missoula office of the Federal Defenders of Montana. I represent Mr. Cruz-Zayas. In civics class, we learned that Congress passes the laws, the executive branch enforces the laws, and the judiciary applies the laws. What the Feeney Amendment did was violate that separation of powers, checks and balances principle by passing a law that took the judiciary's ability to apply the law, stripped that right, that prerogative of the judiciary, and gave it to the executive branch. And that's been crystallized in Section 5K3.1 of the Guidelines, which the Guidelines call the Early Disposition Program, but which at least the Ninth Circuit judges are probably more familiar with. It's known as a fast-track program. Kagan. But it's not the same as the fast-track. I mean, if it were just a fast-track program, there's lots of precedent that it's not unconstitutional and not a separation of powers problem, because the question, the decision whether to have a guilty plea and what to charge is properly within the executive. This is involving a downward departure which is going to be imposed by the government by the judge, but only if there's a program set up by, which is approved and set up by the Attorney General. That's correct, Your Honor. Estrada Plata and Banuelos Rodriguez, both authority in this court, said that charging and plea bargaining decisions of the executive branch cannot be interfered with by the judiciary. But here, these aren't charging or plea bargaining decisions. This is a sentencing decision. And while the government can, under the guidelines, control by, as the way the dominoes fall, the sentence that's actually ultimately imposed by the court, here it's gone a step further and the government actually controls and directs the sentence by its control over 5K3.1. And that's what makes this case and 5K3.1 different from this court's previous decisions in Banuelos Rodriguez and Estrada Plata. Let me ask you this. Theoretically, if the Department of Justice offered a district a fast-track program, would the district be obligated to accept it? Could they reject it? That's a good question, Your Honor. Your Honor, I don't know of any circumstance where the district court would reject it, because the reality is this is a way to ---- My point, obviously, is that it takes the offer by the Department of Justice and acceptance by the U.S. attorney for that district in order to create this program. And I don't know whether a district would or would not reject it if it were offered, but theoretically, I suppose they could. And that's the problem I have with your argument is that there was no such program, in effect, in this district. Well, apparently, this is a program that would never be offered to this district because they don't have the congestion of many aliens who are being picked up for crossing. Yeah. And the U.S. attorney in Montana, Bill Mercer, before testimony of the United States Sentencing Commission, made it very clear that, at least under his regime, this program will never be available in Montana. Going back to your question, Judge Hamilton, the language of 5K3.1, it says upon motion of the government, the court may depart downward. But my point is ---- I think that we have two different questions, if I understand Judge Hamilton's question. One is, could the U.S. attorney for the district, i.e., the U.S. attorney, not accept the program? And the second is, if a motion for downward departure was made in a district with the program, could the judge reject the downward departure? Those are two different things. The first question, Your Honor, it is up to the U.S. attorney whether to have these programs. But presumably he works for the attorney general. If the attorney general decided he should have it, he would have it. That is true. That is true. But at least in Montana, we don't have it. And there's testimony under ---- not under oath, but testimony, I believe, we're never going to have it. But then what about the second question, which is more pertinent to the separation of powers issue? If the motion is made, is the judge required to give the downward departure? That's why I was grabbing my Guidelines Manual. It says upon motion of the government, the court may depart downward. Presumably he doesn't have to. Correct. To that degree, there is not an interference with the judiciary. But the obverse is true, i.e., if there is no program and no motion is made, the judge can't give the downward departure. Exactly. And that was going to be my next statement, that the government still controls the sentence in these circumstances, and it does so in a way that violates the separation of powers and the checks and balances. Now, let's back up a minute. At the time that your client pled guilty, there was no program like this anyplace? There was no 5K3.1, correct, Your Honor. Right. I have it, Jeff. Yes. At the time of his sentencing, there was. Yes. He was sentenced in November of 2003. I believe it was November 12th. The 5K3.1 provision of the Guidelines took effect October 27th, 2003. If you look at 1B1.11 of the Guidelines, which controls the ex post facto application of the Guidelines, the district court is obligated to operate with the Guidelines in effect on the day of sentencing unless there's an ex post facto problem. So here he was theoretically eligible for 5K3.1 consideration if the executive branch was willing to so sentence him. And that's the problem. Let's say you were right. In some abstract way, because it hands over to the executive a bunch of predicates with regard to whether this departure is going to be available, there's a separation of powers problem. And I want to bring up something else about that later. How is your client injured? Because what that means is there shouldn't have been this problem. The problem should just go. So how is your client injured by the fact that there's an uncontended because you're essentially walking away from the equal protection argument, which I think is probably wise. So how is your client injured by the fact that a program that shouldn't exist at all, that should just be invalidated, wasn't applied to him? He's injured because the executive branch is controlling his sentence. And had we not been in that place in the first, to begin with, assuming that there was a separation of powers violation, which we clearly believe there is, then the district court would be able to meet its constitutional duty to impose a sentence. You're essentially saying if the you're sort of making a severance kind of argument. And we ought to assume that there would have been the availability of the downward departure without the motion, without the program if it weren't for this statute. Yes. The district court would be able to do the judiciary's job, which is to sentence my client. And here it wasn't permitted to do that because Congress stripped the district court of its sentencing authority  to prosecute with united the power to sentence. You could apply that statement to the sentencing guidelines in toto. That's why you're on. It's designed by prosecutors for the benefit of prosecutors. Yes, Your Honor. I agree with that. But the difference here is that that's why I said the dominoes fall in a certain way that ultimately determines or somehow cabins in the sentence. That's what the guidelines do based on the charging decisions of the prosecution. Here this is taking it a step further. This isn't giving the prosecution the ability to at step A determine what's going to happen at step Z. This is taking the prosecution all the way to step Z and letting them determine the sentence. And that's the difference between this. The sentence rather than the charge and rather than the plea. All right. Now, there are — there may be more than one, but there's at least one other major guideline provision that also depends on a motion by the government, and that's the — 5K1.1. Special assistance. Right? And there is case law upholding that provision as against a separation of powers argument. So how would you — why isn't that controlling? Well, first, Your Honor — Is that the only one, by the way? That's the only one that I'm aware of. Okay. And obviously I've thought about that. First, Your Honor, 5K1.1 is something that's specific to the defendant as opposed to a district-wide policy. Second, the primary justification for letting the executive branch control 5K1.1 is because it's most familiar with its needs in terms of gaining cooperation from a particular defendant as well as with its ability to determine if the cooperation satisfies the substantial assistance standard. Well, that may also be true with regard to how backed up the U.S. Attorney's Office is. But the district court is more aware than the U.S. Attorney's Office how backed up its docket is because obviously the district court is not dealing just with criminal matters or just with civil matters emanating or involving the U.S. Attorney's Office. It's dealing with the entire docket in the district. So that is a fundamental distinction between 5K3.1 and 5K1.1. Moreover, a district court only hears from the ñ the district court isn't in a situation where it's going to be intimately familiar, involved with the cooperation provided by any given defendant. The district court, for instance, isn't at the debriefings that I regularly attend with my clients and agents on behalf of the government and sometimes in AUSA. But as I say, the district court lives on a daily basis with its docket. Moreover, as I originally pointed out, the early disposition program is a district-wide program, whereas 5K1.1 is something that's defendant-specific. And as for the separation of powers challenges to 5K1.1, perhaps they're out there, but I wasn't familiar with those. I wasn't familiar that there's been separation of powers challenges to 5K1.1. Okay, I know in the Supreme Court decision in Wade, they basically said that that wasn't the issue before the court in 1993. That's the one time the Supreme Court specifically addressed 5K1.1. Getting back to the problems with this stripping of the judiciary's authority and transferring it to the executive branch, unisons have unfettered, unilateral, unchecked power because now the executive branch has the power to prosecute and the power to sentence. And that's what violates the separation of powers, and that's what violates checks and balances. One case in all 28J, this is Northern Pipeline Construction Company versus Marathon Pipeline. And there what happened, Congress created in the late 1970s a separate group of bankruptcy judges that didn't have Article III status, and the Supreme Court invalidated that. And to me that's analogous to the situation here where Congress has taken the authority of Article III judges and given it to an entity, in this case executive branch, that doesn't have the Article III protections. And what the Supreme Court said was, quote, the judiciary must stand independent of the executive and legislature to maintain checks and balances and also to guarantee that the process of adjudication itself remains impartial, end quote. That's another problem with this. The prosecutor is now the judge. And how can that be fair? The problem here, as Judge Hamilton indicated, is that's true about the main complaint about the guidelines, which may be going down the tubes anyway, so that's another question. Shouldn't we worry about this now, is that it hands over enormous authority to the prosecutor with regard to charging and with regard to pleading. But here you have the prosecutor directly controlling the piece of it that wasn't directly under control, and that's the sentence. That's the distinction. After the plea decision is made, after the charge decision is made. Right. When you get to court on the day of sentencing, the prosecution decides what the sentence is going to be, and that's the difference between this and the guideline schemes as a whole. Well, it decides in one direction what the sentence is going to be. It doesn't decide, because as we established, that when it makes the motion, it doesn't need to be granted. But if it doesn't make the motion, then it can't be granted. Correct. It's a one-way ratchet. That is true. I will reserve my remaining time. Thank you. Thank you. Good morning, Your Honors. My name is Chris McLean. I'm an assistant United States attorney stationed in Missoula, Montana. And I'm here to talk about the fact that your office doesn't seem to want to see us anymore. It is certainly my pleasure to be here. Your Honors, I don't see the distinction that Mr. Rhodes makes between the circumstances of this case, Section 5K3.1, and this Court's decision in Banuelos-Rodriguez. I just don't see the distinction. In Banuelos, the Central District of California had no fast-track policy. Meanwhile, the Southern District and the Northern District had a fast-track policy. But what was the policy in that instance? The policy was a policy about pleading and charging. It wasn't a policy about downward departures. Am I right about that? That is true. That is true. But the result – But charging and pleading is within the jurisdiction of the executive in general. And sentencing in general is not. That's the difference. So you can deal with the difference, but you can't say there isn't one. Well, I don't see that that is a difference that merits any distinction in this case. I mean, the enactment of a guideline that allows the government to make a motion for a downward departure, if it has a fast-track policy. The statute doesn't say anything about what the fast-track policy is. It doesn't say there has to be any pleas. It doesn't say there has to be any charge bargaining. It could be anything as far as the statute is concerned. It appears that the attorney general could pass a policy – could promulgate a policy that says, you know, even after trials, in order to speed things up so that there won't be sentencing hearings, we'll move for four-point departures. Right? As far as the statute is concerned. The statute doesn't control that discretion in any way. It doesn't say there has to be a plea bargain. It doesn't say there has to be a charge bargain. It doesn't say anything. True. True. Okay. But in that instance, as here, the Court is left with a guideline range, just like every other case. And the guideline range in this case was 30 to 37 months. Judge Malloy said, you know, I think the guideline range covers the punishment aspect. And he also said he thought it was fairly bizarre that he wasn't entitled to this the four-point departure, depending on whether the government made a motion pursuant to a program. Your position is completely indefinite on the purpose of the guideline, Mr. Zegnar. Your Honor, I don't agree with that. I don't agree with that. I mean, this – the guideline range as calculated applies whether you're in the southern district of California or Montana. The only difference is that in California, they have a fast-track policy that would allow the prosecutor there to file this motion for a downward departure. In Montana – That leads to all sorts of discrepancies between districts, doesn't it? The guidelines were passed in order to get some uniformity nationwide. That is true. But in the Court's – Why isn't it antithetical? I think you could concede that without losing your other points. Well, I just really – we're relying on this Court's precedent, saying that this disparity in sentences is not something that violates the Constitution. It may be antithetical for another reason, which is that it doesn't depend on any individual – any of the factors that appear in the general sentencing statute that are supposed to be pertinent. But that doesn't really matter because it's a separate – the statute allows it. So even if Judge Fletcher is right that this is antithetical to the guidelines and even if I'm right that it's antithetical to the overall sentencing statute, there is a statute which seems to permit it. So the question isn't whether the statute permits it. The question is whether there's a constitutional problem with what the statute permits. I agree. I agree. And, you know, we're arguing that this Court has looked at this issue in the context of due process, equal protection, and the separation of powers already. Where's the separation of powers discussion? I'm sorry? Where have we looked at it in terms of separation of powers? We're – I assert that you looked at that in the Ben Wallace Rodriguez case. But it was a different – a completely different provision. It didn't deal with departures of sentencing. I think it's completely analogous to what we're looking at in this case. Why? Because the guideline relies on – allows the district to develop a policy. District being the U.S. attorney. Right. The U.S. Attorney's Office. It's not district. It's the U.S. attorney, not the court. That's correct. That's correct. If it's approved by an attorney general of the United States, then that district can make these motions for downward departure. It's the same thing that happened in California between the Southern District of California and the Central District. Those districts, U.S. Attorney's Offices, had different policies. For what? About – About plea bargains? Plea agreements and charging. Right. Not about downward departures. But this court was considering whether those policies warranted downward departures. That's what Ben Willis Rodriguez was about. Whether those sentencing disparities, the policies of those two districts, were the basis for downward departures. And this court said no, that those differing policies did not warrant downward departures. And so now we have Sentencing Guidelines Section 5K3.1, which really enacts this Court's decision in that regard, that it's up to the United States Attorney's Office for each district to be making these motions pursuant to policies by the Attorney General of the United States. But it is the statute that authorizes the guidelines, and the guidelines that then authorize a district court to grant a motion only if there's a motion, and on a basis that has nothing to do with anything, any characteristic of the defendant, for the convenience of and under a policy developed by the executive having nothing to do with the judiciary. So why isn't that a situation where the executive is making a sentencing decision? Or, as we were saying before, adverse. It is making, in some situations it's making a sentencing decision because it's deciding when the sentence is not available. It decided here, the executive decided that in this district, this downward departure is not available. That is true. That is true, that we would not be making these motions because we don't have this policy to handle illegal alien cases. And how – I'm just having a very hard time seeing how this is the same as the pleading and charging issues that we have already decided. From our perspective, it is – it is – I guess we're just going around, sorry. From our perspective, it's very analogous. It is the very same situation as Van Wellis Rodriguez, where the defendant here is arguing that this guideline is unconstitutional because it creates a sentencing disparity. That's what the – No, he's – he was arguing that. As I understand it, he's not arguing that anymore. Now, we're – we're down to simply – What he's arguing is that there's a separation of powers problem, that the decision to have the sentencing disparity can't be made at the sentencing level by the executive. Initially, I'm sure you're aware, he never made this argument to Judge Malloy. This argument was not made in the initial opening brief. And it's not until the reply brief that we fully flesh out the separation of powers document or argument. Setting that aside, I do want the Court, as you already mentioned, Judge Verzon, to recognize that this is not the only guideline where the government exercises this discretion, this authority. Is the only other one, 5K1.1? 5K1.1. Is that the only other one? Yes, that I know of today, yes. And so it's not unique in the guidelines that we have 5K3.1. The government has this authority and discretion as well under 5K1.1. And, of course, the district court continues to have the authority to deny the motion. We could make the motion in this case, and Judge Malloy could have denied it. Not in the other direction. In this case, if you don't make the motion, it doesn't have the authority, right? That's correct. That's correct. And the regular sentencing guidelines apply just like they do to every defendant everywhere else in the country, Southern District of California or Montana. It's the same situation. It is not an unconstitutional situation. Those are all the comments I have. I'm happy to try to answer any other questions you might have. Let me ask one quite a different question. Apparently, your office doesn't want to go to argument unless it's more than 10 minutes. Your Honors, I think I may have inartfully set forth the reasons for my request. You are the only one. We've got several such motions. And to be straightforward with the Court, our office is experiencing a severe budget problem. And for us to come out for argument for Montana, I've been told is one of the factors that is really causing a great deal of expense problem for our district. And that is the main reason that we're making these motions. But from our point of view, that's what you're there for. You know, you're attorneys who are supposed to show up at arguments. And I would suggest that if there's an issue here, that perhaps the United States attorney has to take it up with the chief judge, and we have to talk about this, but not by ad hoc motions to not show up at argument, which also, by the way, seems to have been made selectively. There was at least one 10-minute case in which I don't think it was made. So that's a little strange as well. We are doing one telephone argument, but it's not the most convenient thing in the world for us. I understand, Your Honor, and I'll carry that home with me. One other procedural thing. I do recognize that this argument was not raised in the reply brief. And we have authority, when it's a purely legal argument, to reach those issues. But it may well be that you haven't had a fair chance to brief it. So if we decided we were going to reach it, would you be interested in doing briefs on the question? Yes. Thank you very much. Thank you. First, with respect to this issue being raised in the district court, I unfortunately was on a temporary duty assignment at the AO when this case was being sentenced. So I inherited the case when I got back to my station in Montana, and I reviewed the transcript, and the phrases due process and equal protection were bandied about. And I should have, in my opening brief, also thrown in separation of powers. Judge Malloy obviously considered the constitutional dimensions of this situation, and we would, as Judge Berzon noted, legal issues that don't require factual development can be reviewed by this court at this stage. Plus, we'd also note that generally the rule of law is that while claims can be waived, arguments can't. And here, there clearly was a constitutional challenge below, although the separation of powers challenge wasn't specifically articulated. Second, with respect to Banuelos Rodriguez, I just direct the court to the holding of that case, which is at the internal site, page 978. Quote, we hold that a district court may not grant a downward departure from an otherwise applicable guideline sentencing range on the ground that, had the defendant been prosecuted in another Federal district, the defendant may have benefited from the charging or plea bargaining policies of the United States attorney in that district. Clearly, the court focused on and limited its decision to the charging and plea bargaining aspect of this issue, not the sentencing. I think the hard question here is whether your client, quote, has standing in the sense that would he, if there were, well, maybe not. The problem is that he presumably would not have had this departure available no matter where he was because of the point at which he pled when the program wasn't in place. But I don't know whether that matters for separation of powers, Matt. I think he would be able to benefit this from this under 1B1.11 of the guidelines, which say you apply the guidelines in effect at the date of sentencing unless there is no problem. So if the court was ---- You think that in a district in which this was in effect at the time of the sentencing but not at the time of the plea, the U.S. attorney could have made this motion and it could have been granted? Yes. The Feeney Amendment to Protect Act happened in April of 2003. I know that. But the problem is that if the program wasn't in effect at the time of the plea, that's my hypothetical. Well, what I was getting at, between April and November, would have given the U.S. Attorney's Office time to implement this program, which obviously the districts that are focused on this, this is a major logistical issue in those districts. So certainly from April to November would be plenty of time to get the policy in place via memo. November was when he pled? He was sentenced in November. Okay. With Judge Molloy's court, that means he probably pled in around July. Okay. Thank you very much. Thank you, Your Honors. The case of United States v. Cruz-Zayas is submitted. Do you want to have a break? Are you okay? All right. Dockin v. Chang.
judges: B. Fletcher, Hamilton , Berzon